UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| DeROME A. SEALS | CIVIL ACTION |
| v. | NO. 10-2848 |
| HERZING, INC. – NEW ORLEANS | SECTION "F" |

ORDER AND REASONS

Before the Court are three motions: (1) the plaintiff's motion to suppress confidential consent award; (2) the defendant's motion to enforce settlement agreement, to deposit settlement funds into the registry of the Court, and to award attorneys' fees and costs; and (3) the plaintiff's motion for leave to amend complaint. For the reasons that follow, the defendant's motion to enforce settlement agreement and request for fees and costs is GRANTED, the defendant's request to deposit funds into the Court's registry is DENIED without prejudice, and the plaintiff's motions are DENIED.

## Background

This lawsuit arises out of a paralegal student's claim that the defendant university wrongfully returned his Pell Grant to the U.S. Department of Education and removed him from the school's paralegal program.

On April 14, 2009 DeRome Seals enrolled at the New Orleans campus of Herzing University as a student in its paralegal program. When enrolling, Seals provided Herzing with copies of

1

transcripts from Tuskegee University, including copies of his bachelor's and masters degrees. He also signed an Enrollment Agreement with Herzing, which contained a provision requiring that all disputes be resolved by binding arbitration.

During the course of enrolling at Herzing, Seals applied for financial assistance by completing a federal Free Application for Federal Student Aid. In his 2009 application, executed on April 9, 2009, Seals represented that he would not have obtained his first bachelor's degree before July 1, 2009. Seals was awarded a Pell Grant. Before his second school year began, on March 18, 2010, Seals completed another FAFSA application for federal financial assistance and again represented that he would not have obtained his first bachelor's degree before the start of the school year. Seals was awarded another Pell Grant.

In July 2010 Herzing officials discovered that Seals had been awarded Pell Grants that they believed he was not entitled to receive. In preparing financial packages, Herzing officials noticed that Seal's FAFSA applications stated that he had not received his first bachelor's degree when school records showed that he had. Herzing then notified Seals that it had returned his Pell Grant of $7,150 to the Department of Education because it believed that Seals had improperly received the grant money. Herzing also advised Seals that his enrollment was being withdrawn

because of his dishonesty.[1] Seals requested an appeal of the decision to return the funds and withdraw him from school. On July 17, 2010 Herzing forwarded an email addressing the balance owed and of a report made to the Office of The Attorney General of Louisiana. On July 30, 2010 Seals forwarded a "formal complaint" against Herzing to the Department of Education. Seals, who would have graduated from Herzing in December 2010, sent a letter to

---

[1] The July 6, 2010 letter, presented to Seals at a meeting, provides:

> It has come to our attention that you have received $7150 in Pell Grant to which you were not entitled.
>
> On your previous 3 Free Applications for Federal Student Aid..., you indicated that you did not have your first Bachelor Degree.

According to documents on file with our Academic Department, you obtained your Bachelors Degree in 1992 and Masters Degree in 1998. Once a student has earned a Bachelor Degree, Pell Grant is no longer awarded.

The amount of $7150 in Pell Grant was returned to the Department of Education by our institution. Once we removed the charges for classes you were to take in Session B, your balance to this institution is $4930.00. You now owe this balance to Herzing University. We need to set up payment arrangements for this amount. Failure to do so will result in this being turned over to our collections agency.

On the Free Application for Federal Student Aid, which you signed, it clearly states, "if you purposefully give false or misleading information, you may be fined up to $20,000, sent to prison, or both."

It is our decision to withdraw you from enrollment due to dishonesty and we will be notifying the Department of Education of your offense....

Herzing denying the balance owed.

In late August 2010 Seals sued Herzing University, seeking $2 million in damages for Seal's mental and emotional anguish, embarrassment, humiliation, aggravated pre-existing illnesses, undue stress, homicidal/suicidal ideations, irascibility, and heightened unreasonable irritability. Seals asserts that Herzing violated his civil rights (under the 5th and 8th Amendments), negligently and intentionally inflicted emotional distress on him, libeled him, defamed his character, aggravated a pre-existing illness, and attempted extortion. Invoking the arbitration clause contained in the enrollment agreement, Herzing requested that this Court dismiss the plaintiff's complaint and compel arbitration. On November 22, 2010 the Court granted Herzing's motion to compel arbitration.

Pursuant to the parties' arbitration agreement, Seals and Herzing submitted to arbitration before the American Arbitration Association. Herzing then filed a counterclaim against Seals, seeking damages in the amount of $4,930 for what Herzing claimed was owed following its return of Pell Grant overpayment to the Department of Education. Seals answered and denied the counterclaim on August 1, 2011. On September 8, 2011 the AAA issued a notice of hearing, scheduling a two-day arbitration hearing for December 7 and 8, 2011 before a neutral arbitrator. The parties then conducted discovery pursuant to the scheduling

order issued on September 26, 2011.

On December 6, 2011, Seals retained David Coleman as his counsel. At the hearing the next day, Mr. Coleman appeared on behalf of Seals, and presented a notice of appearance confirming his representation. The arbitration proceeded. During the second day, on December 8, 2011, Seals, after conferring with his counsel, accepted a confidential settlement offer made by Herzing. Once the offer was accepted, it was reduced to writing in a document entitled "Confidential Consent Award." The terms of the settlement agreement were recited on the record while the parties and their counsel listened; Seals was permitted to ask questions. After receiving clarification on certain provisions, Seals responded "Okay" in response to the arbitrator's question "So, is everybody comfortable with the terms of this?" Once reduced to writing, the Confidential Consent Award was signed by the parties, counsel for the parties, and the neutral arbitrator. The text of the agreement was then recited on the record with the parties, counsel, and the arbitrator present, each acknowledging that all had signed the document. After concluding the recitation of the agreement, the arbitrator confirmed whether "everybody [was] comfortable with the settlement and the Consent Award," to which Seals responded "Yes."

Once the settlement agreement was signed, it was agreed that counsel for Herzing would prepare formal settlement documents to be circulated prior to disbursing the settlement funds, and that

5

all of the plaintiff's claims against Herzing would be dismissed with prejudice in both the arbitration and the federal lawsuit. Counsel for Herzing then began preparing the formal settlement documents.

However, the plaintiff, *pro se*, now seeks to "suppress" (or, presumably, rescind), the Confidential Consent Award; he also seeks to amend his complaint. The defendant now requests that the Court enforce the settlement agreement,[2] grant it leave to deposit the settlement funds into the registry of the Court, and that it be awarded from the funds deposited its attorneys' fees and costs incurred.

I.

This Court has inherent power to recognize, encourage, and enforce settlement agreements. <u>Bell v. Schexnayder</u>, 36 F.3d 447, 449-50 (5th Cir. 1994)(citations omitted). Federal courts sitting in diversity apply state law when determining the validity of settlement agreements, so long as none of the substantive rights and liabilities of the parties derive from federal law. <u>See</u>, <u>e.g.</u>, <u>Lefevre v. Keaty</u>, 191 F.3d 596, 598 (5th Cir. 1999). Here, the plaintiff asserts various state law claims and purports to assert violations of the Fifth and Eighth Amendments to the U.S.

---

[2]In order to preserve the confidentiality of the Confidential Consent Award, on January 9, 2012 this Court granted the defendant's motion to seal those exhibits that announced the settlement agreement's terms.

6

Constitution. The Court will look to state law to determine whether to enforce the settlement agreement, as proposed by the defendant or, instead, whether to rescind the settlement agreement, as urged by the plaintiff.

*A.*

Louisiana law provides:

> A compromise is a contract whereby the parties, through concessions made by one or more of them, settle a dispute or an uncertainty concerning an obligation or other legal relationship.

La. Civ. Code art. 3071. Compromises are favored in the law and the burden of proving the invalidity of such an agreement is on the party attacking it. <u>Elder v. Elder & Elder Enterprises, Ltd.</u>, 948 So.2d 348, 351 (La.App. 4 Cir. 2007)(citation omitted). Essential elements of a compromise include: (1) mutual intent to put an end to the litigation; and (2) reciprocal concessions of the parties in adjustment of their differences. <u>Rivett v. State Farm Fire and Casualty Company</u>, 508 So.2d 1356, 1359 (La. 1987).

To be valid under Louisiana law, a compromise (and contracts generally) must meet certain statutory requirements, namely offer and acceptance. Regarding consent, Louisiana Civil Code article 1927 provides:

> A contract is formed by the consent of the parties established through offer and acceptance.
>
> Unless the law prescribes a certain formality for the intended contract, offer and acceptance may be made orally, in writing, or

7

> by action or inaction that under the circumstances is clearly indicative of consent.
>
> Unless otherwise specified in the offer, there need not be conformity between the manner in which the offer is made and the manner in which the acceptance is made.

La.Civ. Code art. 1927. A compromise "shall be made in writing or recited in open court" (La.Civ.Code art. 3072), and "settles only those differences that the parties clearly intended to settle." La.Civ. Code art. 3076.[3]

*B.*

The Court's role in interpreting contracts is to determine the common intent of the parties. La. Civ. Code art. 2045. In determining common intent, pursuant to Civil Code article 2047, words and phrases used in contract are to be construed using their plain, ordinary and generally prevailing meaning, unless the words have acquired a technical meaning. See Henry v. South Louisiana Sugars Co-op., Inc., 957 So.2d 1275, 1277 (La. 2007) (citing Cadwallader, 848 So.2d at 580). "When the words of a

---

[3]It is not necessary that all aspects of the compromise be contained in a single document; rather, "[w]here two instruments, read together, outline the obligations each party has to the other and evidence each party's acquiescence in the agreement, a written compromise agreement has been perfected." Preston Law Firm, L.L.C. v. Mariner Health Care Mgmt. Co., 622 F.3d 384, 390 (5th Cir. 2010)(per curiam)(quoting Klebanoff v. Haberle, 978 So.2d 598, 602 (La.App. 2 Cir. 2008)). Furthermore, the writing requirement for a valid compromise may be satisfied by emails. La.R.S. § 9:2607; Preston Law Firm, 622 F.3d at 391 (citations omitted).

8

contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties' intent" (La. Civ. Code art. 2046), and the agreement must be enforced as written. Hebert v. Webre, 982 So.2d 770, 773-74 (La. 2008).

*C.*

It is undisputed that Seals and Herzing entered into a valid written compromise; the agreement was also recited on the record during an arbitration proceeding. Seals does not meaningfully dispute these facts. Instead, he suggests that his lawyer pressured him into settling his claims with Herzing. The record is to the contrary.[4] And, even if it were not, the grounds for rescinding a valid settlement agreement are limited to error, fraud, and other grounds for annulment of contracts; a compromise cannot be rescinded for error of law or lesion. La.C.C. art. 3082.

Louisiana law favors compromises and courts must enforce

---

[4]The terms of the agreement and the arbitration hearing transcript show that the parties mutually intended to put an end to the litigation and to make reciprocal concessions in adjustment of their differences: Seals showed that he intended to put an end to the litigation by indicating his assent not once but twice on the record, after being afforded and, indeed, utilizing an opportunity to ask questions; Seals also affixing his signature on the Confidential Consent Award. Examining the terms of the sealed settlement agreement, it is equally clear that the parties made reciprocal concessions to adjust their differences, including but not limited to Herzing's agreement to release its counterclaim against Seals in exchange for Seals' agreement to completely release Herzing of all claims that were or could have been asserted against it.

them as written, unless clear and convincing evidence shows that the compromise is invalid. Jerome v. Duggan, 609 So.2d 1119, 1123 (La.App. 2d Cir. 1992). There is no evidence showing that the compromise is invalid. While establishing that a contracting party's consent was obtained by duress may vitiate an otherwise valid compromise, Seals' unsupported suggestion that his lawyer somehow forced him to settle his claims is not only unfounded in the record, it falls well short of establishing duress. And dangerously borders on frivolous. Louisiana Civil Code article 1959 provides that "[c]onsent is vitiated when it has been obtained by duress of such a nature as to cause a reasonable fear of unjust and considerable injury to a party's person, property, or reputation...." There is absolutely no evidence that Seals' lawyer, Mr. Coleman, deprived Seals of his liberty, or otherwise resorted to threatening physical injury to his property or person, in order to obtain his consent to the Confidential Consent Award.[5] Seals had ample opportunities to confer with his lawyer, and to ask questions or object to the settlement in the presence of opposing counsel and the arbitrator. He could have fired his lawyer and, as he does now, represent himself. He never suggested that he did not

---

[5]Even Seals' own papers fail to support that he was "under duress". Seals contends that Coleman was "relentless and unyielding in his mission to persuade Plaintiff to consent" to the agreement. Seals quotes Coleman as advising that "[t]here is clear money on the table and this is not he [sic] time to gamble, you can walk away with nothing." A lawyer's advise to his client, however, is certainly not tantamount to duress.

consent to the agreement and submits no evidence that his assent was forcibly obtained by Mr. Coleman. Accordingly, the agreement will be enforced, not rescinded.

## II.
### *A.*

Having determined that the parties' settlement is enforceable, the Court next considers Herzing's request that the Court accept into its registry the settlement proceeds.

Federal Rule of Civil Procedure 67(a) provides:

> **Depositing Property**. If any part of the relief sought is a money judgment or the disposition of a sum of money or some other deliverable thing, a party – on notice to every other party and by leave of court – may deposit with the court all or part of the money or thing, whether or not that party claims any of it. The depositing party must deliver to the clerk a copy of the order permitting deposit.

Herzing contends that it is entitled to perform its obligation under the parties' contract, by paying the settlement funds into the Court's registry.[6] The Court agrees, but it appears that the request to deposit funds is premature. Once Herzing files a motion and proposed order that complies with this Court's Local Rules 67.1 and 67.2, the Court can entertain the motion to deposit funds into the Court's registry.

---

[6]Herzing suggests that there might be some disagreement between Seals and Coleman regarding the fee arrangement for the arbitration and that, therefore, they might dispute the other's entitlement to a certain amount of the settlement proceeds.

*B.*

Herzing next contends that it has been forced to incur additional attorney's fees and costs as a result of the plaintiff's frivolous motion to suppress; Herzing seeks an award of its fees and costs, ordered to be paid from the settlement funds deposited into the registry of the Court. The Court agrees that the plaintiff's motion is unsupportable and that Herzing is, therefore, entitled to a reasonable award of attorney's fees and costs associated with opposing the plaintiff's motion to suppress and pursuing its own motion to enforce the settlement, to be determined by the Magistrate Judge.

III.

Finally, Seals seeks to amend his complaint. He suggests that "[a]fter extensive research and court proceedings, Plaintiff has discovered and determined the true violations perpetrated by the Defendant against the Plaintiff." Herzing opposes Seals' motion to amend his complaint, contending that by signing the Confidential Consent Award, Seals agreed to provide a complete release of all claims against Herzing and, therefore, his amended claims are precluded by the doctrine of *res judicata*. The Court agrees: Seals has resolved his claims against Herzing.

A valid compromise precludes the parties from litigating the matter that was compromised. La.Civ.Code art. 3080. In light of this Court's finding that the settlement agreement is valid and

enforceable, Seals' motion to amend his complaint is DENIED. Seals cannot resurrect claims that he agreed to release in a valid, enforceable settlement with Herzing.

Accordingly, IT IS ORDERED: that the plaintiff's motion to suppress confidential consent award and the plaintiff's motion for leave to amend his complaint are both DENIED; the defendant's motion to enforce settlement agreement and for fees and costs is GRANTED; the quantum of the fee award is referred to the Magistrate Judge. Finally, IT IS FURTHER ORDERED: that the defendant's request that the Court deposit funds into the Court's registry is DENIED without prejudice, to be re-filed in accordance with the Local Rules.

New Orleans, Louisiana, January 11, 2012

_____
MARTIN L. C. FELDMAN
UNITED STATES DISTRICT JUDGE